IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

XIN LIU and HAU REN,                    No. Civ. S-06-2808 RRB EFB

      Plaintiffs,                    <u>Memorandum of Opinion</u>
                                              <u>and Order</u>

     v.

MICHAEL CHERTOFF, Secretary of
the Department of Homeland
Security; EMILIO T. GONZALES,
Director United States
Immigration Services; CHRISTINA
POULOS, Acting Center Director,
United States Citizenship and
Immigration Services; ROBERT S.
MUELLER, Director Federal
Bureau of Investigation,

      Defendants.

_____/

    Plaintiffs, Xin Liu ("Liu") and Huan Ren ("Ren") (collectively "Plaintiffs"), filed this action seeking to compel defendants, Michael Chertoff, Secretary of the Department of Homeland Security, Emilion T. Gonzalez, Director of the U.S. Citizenship and Immigration Services, Christina Poulos, Acting

1

Director of the U.S. Citizenship and Immigration Services, California Service Center and Robert S. Mueller, III, Director of the Federal Bureau of Investigation (collectively "Defendants"), to adjudicate their I-485 applications for adjustment to permanent resident status. Plaintiffs assert they are entitled to a writ of mandamus compelling adjudication of their I-485 applications because Defendants have improperly delayed in processing such applications. Plaintiffs now move for summary judgment pursuant to Federal Rule of Civil Procedure § 56(c). For the following reasons, the Court GRANTS the motion.[1]

## I. BACKGROUND

On or about December 16, 2004, Plaintiffs, natives of China, filed I-485 applications with the United States Citizenship and Immigration Services ("USCIS") to adjust their immigration status to lawful permanent resident. Compl. ¶¶ 1, 4

---

[1]   Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter. See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required). As a result, the oral argument presently scheduled for Wednesday, August 22, 2007, at 10:00 a.m., is hereby **VACATED**.

& 9.[2]   The adjudication of an I-485 application requires three background and security checks: a Federal Bureau of Investigation ("FBI") fingerprint check, an Interagency Border Inspection System ("IBIS") check, and an FBI name check.   Decl. of Wendy S. Clark ("Clark") ¶¶ 3-4.[3]

---

[2]   Plaintiffs' filed their I-485 applications concurrently with Liu's filing of an I-140 Immigrant Petition for Alien Worker through her employer, University of California, Davis; it was approved by USCIS on July 11, 2005.   Compl. at Exhs. 1-3. Liu is the direct beneficiary of the I-140 petition filed on her behalf by University of California, Davis, who seeks to employ her as an assistant professor of computer science.   Decl. of Monte Herring ("Herring") ¶ 3.   Ren, Liu's husband, is a derivative beneficiary of the same I-140 petition.   Decl. of Herring ¶ 3.

[3]   Defendants have submitted the declaration of Wendy S. Clark, the Acting Assistant Director with the USCIS' California Service Center ("CSC").   Decl. of Clark ¶ 1.   Ms. Clark attests that there are various security checks that must be performed – in order to enhance national security and ensure the integrity of the immigration process – before an application can be adjudicated.   Decl. of Clark ¶¶ 3-4.   The various types of checks that must be performed are explained in the "Fact Sheet," attached to Clark's declaration.   Decl. of Clark ¶ 4.   The checks include: (1) an IBIS name check; (2) an FBI fingerprint check; and (3) an FBI name check.   Fact Sheet, attached to Decl. of Clark.   The IBIS system contains records and information from over 20 federal law enforcement and intelligence agencies, including the Central Intelligence Agency ("CIA"), FBI, Department of State, Department of Homeland Security ("DHS") Customs and Border Protection and other DHS agencies.   Decl. of Clark ¶ 4.   The FBI records maintained in the name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement agencies.   Decl. of Clark ¶ 4.   Finally, the FBI fingerprint checks provide information relating to criminal background within the United States.   Decl. of Clark ¶ 4.

On June 30, 2006, Plaintiffs made an inquiry to the USCIS about the status of their applications and were subsequently informed that their applications had yet to be processed due to pending background checks.  Compl. ¶ 11.  To date, Ren's security checks have been completed but Liu's FBI name check remains outstanding.  Decl. of Herring ¶¶ 5-6.  As such, neither application has been adjudicated because Ren's application cannot be completely processed until Liu's application is approved as he is a derivative beneficiary.  Decl. of Herring ¶ 5.  Thus, both applications cannot be adjudicated until the FBI name check on Liu is completed.  Decl. of Herring ¶ 5.

On December 11, 2006, nearly two years after submitting their applications, Plaintiffs filed the instant action seeking review of USCIS inaction in the form of improper delay in adjudicating their I-485 adjustment of status applications. Compl. ¶ 12.  Plaintiffs now seek mandamus relief in the form of an order requiring Defendants to immediately and properly adjudicate their I-485 applications.  Compl. ¶ 21.

## II. DISCUSSION

A.   Legal Standard

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

4

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. Id. at 248. A material fact is "genuine," if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. The burden then shifts to the nonmoving party to establish, beyond the pleadings, and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

"'When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.'" Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006) (quoting C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000)).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." Miller, 454 F.3d at 988 (internal quotation marks omitted) (citing Hunt v. Cromartie, 526 U.S. 541, 552 (1999)).  "But the non-moving party must come forward with more than 'the mere existence of a scintilla of evidence.'"  Miller, 454 F.3d at 988 (quoting Anderson, 477 U.S. at 252).  Thus, "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Miller, 454 F.3d at 988 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986.)).

B. Mandamus and APA Jurisdiction

Defendants argue that this court lacks subject matter jurisdiction to review whether agency inaction has been

unreasonable because the pace at which I-485 applications are processed is within the discretion of the Attorney General.

1. Mandamus Jurisdiction

28 U.S.C. § 1361 provides, that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361 is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616. "A writ of mandamus is appropriately issued only when (1) the plaintiff's claim is 'clear and certain'; (2) the defendant official's duty to act is ministerial, and 'so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir. 1994) (quoting Fallini v. Hodel, 783 F.2d 1343, 1345 (9th Cir. 1986)).

2. APA Jurisdiction

"The APA authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 61 (2004); 5 U.S.C. § 702. "'[A]gency action' is

defined . . . to include 'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act.*'" <u>Norton</u>, 542 U.S. at 62 (emphasis in original).   When an agency fails to act, the APA provides relief in the form of empowering a court to compel agency action unlawfully withheld or unreasonably delayed.   <u>Id</u>.

The APA provides relief for a failure to act insofar as it empowers a district court to compel an agency to perform a ministerial or non-discretionary act, or to act on a matter without directing it how to act, so long as the plaintiff has asserted a discrete agency action that it is required to take, if the agency unlawfully withheld or unreasonably delayed in acting on a duty.   <u>Norton</u>, 542 U.S. at 63-65; <u>see</u> 5 U.S.C. § 555(b) (Under the APA, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude the matters presented to it").   Should an agency not proceed as directed by 5 U.S.C. § 555(b), a court may hear a petition for a writ of mandamus compelling an agency to perform an "action unlawfully      withheld      or      unreasonably      delayed." 5 U.S.C. § 706(1).[4]   In short, a plaintiff may invoke subject

---

[4]   5 U.S.C. § 706(1) provides that a district court "shall compel agency action unlawfully withheld or unreasonably delayed."

matter jurisdiction under the APA, if he or she shows that a defendant (1) had a nondiscretionary duty to act, and (2) unreasonably delayed in acting on that duty.  _Norton,_ 542 U.S. at 63-65.

Relief under mandamus and the APA is essentially the same when a petitioner seeks to compel an agency to act on a non-discretionary duty.  See _Independence Mining Co. v. Babbitt_, 105 F.3d 502, 507 (9th Cir. 1997).

C. Non-Discretionary Duty

The Immigration and Nationality Act ("INA") authorizes "the Attorney General, in his discretion," to adjust to permanent residence status certain aliens who have been admitted into the United States.  8 U.S.C. § 1255(a).[5]  However, as the government has conceded in at least two similar actions, see _Singh v. Still,_ 470 F.Supp.2d 1064, 1067 (N.D. Cal. 2007) and _Gelfer v. Chertoff,_ 2007 WL 902382, *2 (N.D. Cal. 2007), while its duty to grant an adjusted status is discretionary, its duty to _process_ I-485 applications under § 1255 is non-discretionary.  See _also Aboushaban v. Mueller_, 2006 WL 3041086, *2 (N.D. Cal. 2006) (holding that the duty to adjudicate a plaintiff's I-485

---

[5]   Section 1255(a) provides that: "[t]he status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion _and under such regulations as he may prescribe,_ to that of an alien lawfully admitted for permanent residence[.]"  8 U.S.C. 1255(a) (emphasis added).

application is non-discretionary).  The Court is persuaded by the reasoning of these cases.

As such, the Court concludes that it has subject matter jurisdiction to consider whether the Defendants have unreasonably delayed in performing their non-discretionary duty to adjudicate Plaintiffs I-485 applications.  See <u>Wu v.Chertoff, et al.</u>, 2007 WL 1223858, *3 (N.D. Cal. 2007) (holding that a clear and certain right exists to have an immigration status adjustment application adjudicated in a reasonable time frame); <u>Singh</u>, 470 F. Supp. 2d at 1067 (plaintiffs seeking adjustment of their legal status have a right, enforceable through a writ of mandamus, to have their applications processed within a reasonable time"); <u>Gelfer</u>, 2007 WL 902382 at *2 (the government has a statutorily prescribed duty to adjudicate a petitioner's immigration status adjustment application 'within a reasonable time' under 5 U.S.C. § 555(b)).[6]

---

[6]   See also <u>Yu v. Brown</u>, 36 F.Supp.2d 922, 932 (D.N.M. 1999) (although no time frame is expressly defined in the INA [with respect to the adjudication of applications for a change of status to permanent resident], "a contrary position would permit [Defendants] to delay indefinitely," and "Congress could not have intended to authorize potentially interminable delays"); <u>Gelfer</u>, 2007 WL 902382 at *2 ("[a]llowing the respondents a limitless amount of time to adjudicate petitioner's [I-485] application would be contrary to the 'reasonable time' frame mandated under 5 U.S.C. § 555(b) and, ultimately, could negate the USCIS's duty under 8 C.F.R. 245.2(a)(5)").

Defendants rely on 8 U.S.C. § 1252(a)(2)(B)(ii) to support their argument that this court lacks subject matter jurisdiction to review whether agency inaction has been unreasonable.  Def.'s Opp. to Pl.'s Mot. for Summary Judgment at 5, n.1.[7]  Defendants' reliance is misplaced.  <u>See</u> <u>Konchitsky v. Chertoff</u>, 2007 WL 2070325, *3 (N.D. Cal. 2007) (finding that § 1252(a)(2)(B)(ii), titled, "Denials of discretionary relief," does not apply to a plaintiff seeking an order compelling adjudication of an I-485 application because he or she has neither been granted nor denied relief, but rather simply denied a decision).  Moreover, because Defendants have a non-discretionary duty to process I-485 applications, § 1252(a)(2)(B)(ii) is not implicated as that section only divests jurisdiction of discretionary actions of the Attorney General or Secretary of Homeland Security.  <u>See</u> <u>id</u>.[8]

---

[7]    Section 1252(a)(2)(B)(ii) provides that "[n]otwithstanding any other provision of law . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of [asylum] under section 1158(a) of this title."

[8]    The court recognizes that there is a split in authority as to the discretionary nature of the pacing at which I-485 applications are processed, and that some courts have adopted Defendants position that courts have no authority to intervene when an immigration application remains unadjudicated for an unreasonable amount of time.  <u>See</u> <u>e.g.</u>, <u>Safadi v. Howard</u>, 466 F. Supp. 2d 696 (E.D. Va. 2006); <u>Zheng v. Reno</u>, 166 F.Supp.2d 875 (S.D.N.Y. 2001).   The court however is unpersuaded by the

D.   Unreasonable Delay

Defendants argue that the delay in processing Plaintiffs' I-485 applications has not been unreasonable because it timely initiated investigations into Plaintiffs' backgrounds and the delay in processing such applications has been due to the complexity of the security checks, including the time-consuming nature of reviewing documents when common names like Liu are involved.  Defendants also argue that the delay has not been unreasonable because any inconvenience suffered by Plaintiffs from the delay is outweighed by the importance of completed background checks to national security.

"In cases where courts have addressed the specific issue of whether there has been unreasonable delay in processing an immigration status application, courts typically 'look[ed] to the source of the delay--e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding.'"  <u>Singh</u>, 470 F. Supp.

---

reasoning of these cases.  The court finds that the better rule permits judicial review of unreasonably delayed petitions, because without mandamus relief, USCIS could withhold a decision indefinitely in contravention of its non-discretionary duty to process such petitions.  <u>See Okunev v. Chertoff</u>, 2007 WL 2023553, *2, n.9 (N.D. Cal. 2007) (noting that there are too many important rights associated with permanent resident status (e.g., the right to travel abroad freely, the requirement of five years of legal permanent status prior to seeking naturalization, and the ability to petition to immigrate close family members) to allow the speed at which these applications are processed to go entirely unchecked).

2d at 1068.   What constitutes a reasonable time for adjudicating an immigration application depends on the facts of each case. Yu, 36 F. Supp. 2d at 935; see Yong Tang v. Chertoff, 2007 WL 1821690,*7 (D. Mass. 2007) (observing that while Congress has not been kind enough to provide a clear statutory benchmark by which the Court can determine when a delay is unreasonable under 5 U.S.C. §§ 555(b) or 706(1), this does not render 5 U.S.C. §§ 555(b) or 706(1) null, nor has it stopped courts from finding delays unreasonable in the past).

In assessing the reasonableness of agency delay, courts consider the following factors: "(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency

action is unreasonably delayed." <u>Yu</u>, 36 F. Supp. 2d at 934 (internal quotation marks omitted).

In the instant action, Plaintiffs filed their I-485 applications on December 16, 2004. As such, their applications have been pending for more than two-and-a-half years. The applications remain pending due to Liu's outstanding FBI name check. USCIS contends that it cannot process Plaintiffs' I-485 applications until the FBI name check clears with a finding of "no record." Decl. of Herring ¶ 5.[9]   According to USCIS, FBI name check requests are processed chronologically based on the request date, and that only certain qualified applications can be expedited. Decl. of Clark ¶ 13. Currently, USCIS is processing I-485 applications for adjustment of status received as recently as March 15, 2007, more than two years after it received Plaintiffs' application. Exh. 1, attached In Support of Pl's Mot. for Summary Judgment.

While Congress has not set forth a statutory time limit for adjudication of I-485 applications, the USCIS is required to conclude the matters presented to it within a reasonable time. <u>See</u> 5 U.S.C. §§ 555(b), 706(1); <u>see also</u> 8 U.S.C. § 1571(b) ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days

---

[9]   Ren's FBI name check cleared with "no record" on January 6, 2006.

after the initial filing of the application . . .").
Additionally, as USCIS concedes, "[f]or most applicants, [it]
can quickly determine if there are criminal or security related
issues in the applicant's background that affect eligibility for
immigration benefits." Decl. of Clark ¶ 10. For example,
results of an IBIS check are "usually available immediately" and
the FBI generally forwards fingerprint check responses to USCIS
"within 24-48 hours." Fact Sheet at 2, attached to Decl. of
Clark. Also, most FBI name checks are resolved quickly and less
than one percent remain pending beyond six months. Fact Sheet
at 2, attached to Decl. of Clark. Cases pending longer than six
months generally involve "highly sensitive" and "complex"
information and therefore cannot be resolved quickly. Fact
Sheet at 2, attached to Decl. of Clark. According to USCIS,
although most cases proceed forward without incident, due to
both the sheer volume of security checks conducted and the need
to ensure that each applicant is thoroughly screened, some
delays are inevitable. Fact Sheet at 2, attached to Decl. of
Clark. For instance, some cases are so labor-intensive and
time-consuming that they can take years to resolve. Fact Sheet
at 2-3, attached to Decl. of Clark.

     Although there is no time frame imposed on Defendants to
process applications, the average times for processing
applications, and for conducting security checks, are a good

indicator of whether a delay is reasonable.   See Konchitsky,
2007 WL 2070325 at *3.   Here, the delay is due to the pendency
of Liu's FBI name check.   Decl. of Herring ¶ 5.   Defendants
attribute the delay in this regard to the large volume of
applications received and the extensive background checks
required to process them, especially in cases, like here, where
a common name like Liu is involved.[10]

While Defendants have made general assertions regarding the
delay, they have failed to point to any specific evidence
suggesting that: (1) the delay is attributable to Plaintiffs; or
(2) Plaintiffs' applications are particularly complex; or (3)
higher priorities exist necessitating the slow progress in
Plaintiffs' case.   Moreover, Defendants have not pointed to a
single action taken to expedite the processing of the FBI name
check or to any particularized evidence explaining why
Plaintiffs' applications require an extended delay of more than
two-and-a-half years, far beyond the 180 days recommended by
Congress.   See 8 U.S.C. § 1571.   Defendants, for instance, have
not presented evidence showing that the FBI name check revealed
a match or some other positive (derogatory) information.   Nor
have Defendants shown that this case involves a time-consuming

---

[10]     Ms. Clark attests in her declaration that the CSC receives
approximately 5,000 I-485 applications a month and currently has
30,000 I-485 applications awaiting adjudication.   Decl. of Clark
¶ 6.

and labor-intensive investigation, or that it involves complex, highly sensitive information precluding a quick resolution. Instead, Defendants have simply made general assertions about the delay, including that security checks are complex and can be tedious when common names like Liu are involved.   The court concludes that Defendants explanation is insufficient to render the delay experienced by Plaintiffs reasonable.   Nor does it create a genuine issue of fact as to whether Defendants fulfilled their non-discretionary duty to adjudicate Plaintiffs' applications in a reasonable time.

Additionally, to the extent that Defendants invoke national security as a reason for delay, the court rejects this explanation given the length of delay and the fact that Plaintiffs have been living and working in the United States during the pendency of their applications.  See Yong Tang, 2007 WL 1821690 at *8.  Indeed, mere invocation of national security, without a particular explanation of how it caused delay, is insufficient to justify delay.  Konchitsky, 2007 WL 2070325 at *5; Okunev, 2007 WL 2023553 at *2.  Finally, to the extent that Defendants attribute the delay to the volume of applications received, the court rejects this explanation because, to hold

otherwise, would inequitably shift the costs of an over-taxed system onto Plaintiffs.[11]

In short, while there is no specific time frame imposed on Defendants to process I-485 applications, delay of more than two-and-a-half years is unreasonable under the specific circumstances because there is no evidence in the record demonstrating that the delay is attributable to Plaintiffs nor is there any particularized evidence in the record sufficiently explaining the reasons for the extended delay. Moreover, this unexplained delay is exacerbated by the fact that it has occurred in the immigration arena[12] and has prejudiced Plaintiffs.[13]

---

[11]   See Yong Tang, 2007 WL 1821690 at * 9 (observing that defendants cannot escape their statutory duty to adjudicate applications within a reasonable time by simply asserting that they lack the necessary resources to process the applications. A lack of resources is a policy crisis that is not the responsibility of Plaintiffs. Therefore, it would be inequitable for defendants to shift the costs of an over-taxed system onto Plaintiffs); see also Konchitsky, 2007 WL 2070325 at *5 (quoting Yu, 36 F.Supp.2d at 934) ("'[D]elays of a significant magnitude, particularly when they occur over uncomplicated matters of great importance to the individuals involved, may not be justified merely by assertions of overwork.'" )

[12]   Because delays in the immigration arena affect human health and welfare, they are less tolerable than those that implicate only economic interests. See Singh, 470 F. Supp. 2d at 1069.

[13]   Delay in processing an I-485 application causes prejudice by affecting an immigrant's: (1) right to apply for citizenship – as an application cannot be filed for citizenship until 5 years after obtainment of permanent resident status; (2) ability

For the foregoing reasons, the court concludes that Defendants delay in adjudicating Plaintiffs' I-485 applications has been unreasonable as a matter of law. See Konchitsky, 2007 WL 2070325 at *5-6 (holding that absent a particularized explanation justifying the delay, a more than two year delay in processing an I-485 application was unreasonable as a matter of law); Gelfer, 2007 WL 902382 at *2 (holding that a more than two year delay in processing an I-485 application was unreasonable as a matter of law where defendants simply asserted that the USCIS was awaiting the results of an FBI name check and did not point to a single action taken to further the processing of the application or reason why the application was particularly troublesome); Yong Tang, 2007 WL 1821690 at *7-9 (holding that a nearly four-year delay in processing an I-485 application was unreasonable where the government made representations that 90% of background checks can be completed in approximately 30-60 days, and that, as of September 30, 2006, the wait time for adjustment applications was 7 months); Yu, 36 F. Supp. 2d at 932 (holding that a two-and-a-half year delay in processing a lawful permanent resident status application is on its face an unreasonable amount of time to process a routine application and requires an explanation).

to petition to immigrate close family members; and (3) ability to travel abroad freely. Id. at 1070.

Accordingly, whether pursuant to mandamus or the APA,[14] Plaintiffs are entitled to a writ directing USCIS to adjudicate their I-485 applications expeditiously.[15]

### III. CONCLUSION

For the reasons stated above, the Court GRANTS the motion for summary judgment.

IT IS SO ORDERED.

ENTERED this 22nd day of August, 2007.

s/RALPH R. BEISTLINE
United States District Judge

---

[14] The Court recognizes that for purposes of mandamus relief (although not relief pursuant to the APA), Plaintiffs must also demonstrate that they have no other adequate remedy available to them. See Singh, 470 F.Supp.2d at 1071. The Court concludes that no adequate remedy is available to Plaintiffs. See id. (finding that there is no other adequate remedy available to a plaintiff awaiting adjudication of an I-485 application other than an order compelling the agency to act).

[15] See Singh, 470 F.Supp.2d at 1072 (ordering adjudication of plaintiff's I-485 application "forthwith"); see also Konchitsky, 2007 WL 2070325 at *6-7 (concluding that it is proper to compel USCIS to expeditiously process applications that are delayed due to a pending name check but that it is not proper to compel the FBI to perform name checks in connection with adjustment of status petitions).